UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| RICKY ANTHONY LANIER, | ) | |
| | ) | Case Nos. 2:14-cr-83, 2:24-cv-91 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

| | | |
|---|---|---|
| KATRINA RESHINA LANIER, | ) | |
| | ) | Case Nos. 2:14-cr-83, 2:24-cv-99 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Respondent*. | ) | |

**MEMORANDUM OPINION**

Before the Court are motions filed by Petitioners Ricky Anthony Lanier and Katrina Reshina Lanier to vacate, correct, or set aside their convictions pursuant to 28 U.S.C. § 2255. (Doc. 1 in Case No. 2:24-cv-91; Doc. 1 in Case No. 2:24-cv-99; Docs. 733, 734 in Case No. 2:14-cr-83.) For the following reasons, the Court will **DENY** Petitioners' motions.

I.  BACKGROUND

On August 12, 2014, a federal grand jury returned an indictment charging Ricky Lanier and Katrina Lanier, as well as other defendants, with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, seventeen counts of wire fraud in violation of 18 U.S.C. §

1343, and two counts of major fraud against the United States in violation of 18 U.S.C. § 1031. (Doc. 7 in Case No. 2:14-cr-83.) On April 14, 2015, a grand jury returned its first superseding indictment (Doc. 106 in Case No. 2:14-cr-83), and, on September 9, 2015, it returned a second superseding indictment (Doc. 151 in Case No. 2:14-cr-83). The second superseding indictment also charged Ricky Lanier and Katrina Lanier with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, seventeen counts of wire fraud in violation of 18 U.S.C. § 1343, and two counts of major fraud against the United States in violation of 18 U.S.C. § 1031. (Doc. 151 in Case No. 2:14-cr-83.)

The first trial in this matter began on December 1, 2015. (*See* Doc. 185 in Case No. 2:14-cr-83.) At the conclusion of the first trial, the jury returned a verdict finding Ricky Lanier guilty of conspiracy to commit wire fraud, one count of wire fraud, and two counts of defrauding the United States. (Doc. 203 in Case No. 2:14-cr-83.) The jury also found Katrina Lanier guilty of conspiracy to commit wire fraud, one count of wire fraud, and one count of defrauding the United States. (*Id*.) The Court then sentenced Ricky Lanier to forty-eight months' imprisonment, to be followed by four years of supervised release, and sentenced Katrina Lanier to thirty months' imprisonment, to be followed by three years of supervised release. (Docs. 273, 275 in Case No. 2:14-cr-83.) The United States Court of Appeals, however, determined that Ricky and Katrina Lanier were entitled to a new trial because they were deprived of a meaningful opportunity to prove juror bias in connection with communications that took place between a juror and a state prosecutor during jury deliberations. (*See* Doc. 487-1 in Case No. 2:14-cr-83.)

On remand, this case was reassigned to the undersigned and proceeded to a second trial, which began on July 19, 2022. (*See* Docs. 602, 603 in Case No. 2:14-cr-83.) At the conclusion

of trial, the jury returned a verdict finding Ricky Lanier guilty of conspiracy to commit wire fraud, one count of wire fraud, and two counts of defrauding the United States. (Doc. 620 in Case No. 2:14-cr-83.) The jury also found Katrina Lanier guilty of conspiracy to commit wire fraud, wire fraud, and one count of defrauding the United States. (*Id.*) The Court sentenced Ricky Lanier to forty-eight months' imprisonment and Katrina Lanier to twenty-four months' imprisonment. (Docs. 694, 696 in Case No. 2:14-cr-83.)

Ricky and Katrina Lanier then appealed their convictions and sentences to the Sixth Circuit. In affirming the Court's convictions and sentences, the Sixth Circuit summarized the facts of this case as follows:

> This case centers around two businesses—JMR Investments and Kylee Construction, and two government programs—the Department of Veterans Affairs' Service-Disabled Veteran-Owned Small Business (SDVOSB) program and the Small Business Administration's (SBA) 8(a) Business Development program. The 8(a) program is a government set-aside program intended to benefit small businesses owned by socially and economically disadvantaged individuals. R. 648 (Trial Tr. at 116) (Klein Direct) (Page ID #12528). The SDVOSB program is a government set-aside program intended to benefit small businesses owned by service-disabled veterans. *Id.* at 34-35 (Ward Direct) (Page ID #12446–47).
>
> JMR Investments ("JMR") is owned by Gary Richardson, a friend of Defendant Ricky Lanier ("Mr. Lanier"). R. 634 (Ricky Lanier PSR ¶ 39) (Page ID #11663). Over the course of years, JMR entered into several government construction contracts via the 8(a) program. *Id.* ¶ 50 (Page ID #11668–69). Kylee Construction ("Kylee") is owned by Emanuel Hill, a friend of Mr. Lanier's and relative of Katrina Lanier's ("Mrs. Lanier"), R. 643 (Trial Tr. at 101–02) (E. Hill Direct) (Page ID #12046–47), and, like JMR, Kylee entered into several government construction contracts via both the 8(a) program as well as the SDVOSB program, R. 634 (Ricky Lanier PSR ¶ 50) (Page ID #11669–70).
>
> Though he did not own the businesses, Mr. Lanier ran both JMR Investments and Kylee Construction. R. 647 (Trial Tr. at 91–92) (Speight Direct) (Page ID #12406–07). "He handled the day-to-day activities of the jobs, bidding on the jobs, talking with ... subcontractors, talking to the contracting officers, [making] site visits," and so on. *Id.* Mr. Lanier also made the decisions for the companies, determining which government programs to apply for, determining which government contracts to pursue, and deciding whether to hire subcontractors and, if so, whom to hire. *Id.* Mr. Lanier likewise was responsible for communicating

3

with the government, other contractors, and subcontractors, *id.*, and regularly signed government documents on behalf of the companies and their owners, *id.* at 22 (Speight Direct) (Page ID #12337). Mrs. Lanier was responsible for several financial aspects of the two businesses, including communicating with accounting and directing transfers, deposits, and withdrawals from company bank accounts. *See, e.g.*, R. 650 (Trial Tr. at 39, 44–45) (Klier Direct) (Page ID #12750, 12755–56). Mrs. Lanier also served as a notary public for both companies. *See, e.g.*, R. 643 (Trial Tr. at 50) (Speight Cross) (Page ID #11995). The Laniers together applied for the 8(a) and SDVOSB programs on JMR's and Kylee's behalf. R. 647 (Trial Tr. at 20–21) (Speight Direct) (Page ID #12335–36). Although both Gary Richardson and Emanuel Hill were eligible program participants, the Laniers were not. The owners of JMR and Kylee—Gary Richardson and Emanuel Hill, respectively—had significantly less, if any, involvement in the running of the businesses. *Id.* at 58 (Speight Direct) (Page ID #12373); R. 643 (Trial Tr. at 230) (E. Hill Cross) (Page ID #12175).

The Laniers bid on, and won, several 8(a) and SDVOSB contracts through JMR and Kylee. R. 634 (Ricky Lanier PSR ¶ 50) (Page ID #11668–70). "In total, the face value of the contracts entered into by JMR Investments and Kylee Construction is $14,825,510." *Id.* ¶ 51 (Page ID #11670).

This benefitted both the businesses and the Laniers personally. *See* R. 637 (Trial Tr. at 42–47) (Stevens Direct) (Page ID #11787–92) (analyzing $1.8 million worth of "payments to the Laniers" from JMR and Kylee that were "beyond just a paycheck"). From these JMR and Kylee contracts, the Laniers (1) transferred money to their own businesses of which they were bona fide owners, *id.* at 44–45 (Stevens Direct) (Page ID #11789–90); (2) purchased personal property, *id.* at 45 (Stevens Direct) (Page ID #11790); (3) paid for airplane travel, aviation insurance, and expenses, *id.* at 46 (Stevens Direct) (Page ID #11791); and (4) paid for social groups and activities, *id.* at 47 (Stevens Direct) (Page ID #11792).

In 2012, following a tip "that Ricky Lanier was running Kylee Construction, and not the disabled veteran," the Department of Veterans Affairs began investigating Kylee Construction. R. 650 (Trial Tr. at 13) (Klier Direct) (Page ID #12724). From that and subsequent investigations, several misrepresentations by the Laniers to federal agencies came to light. These misrepresentations included: (1) formal documents falsely stating that Emanuel Hill "bid[ ] and project managed all aspects of Kylee Construction jobs [and] managed materials and subcontractors on site," R. 729-1 (Program App. at 6) (Page ID #14599); R. 647 (Trial Tr. at 28) (Speight Direct) (Page ID #12343); (2) formal documents falsely stating that Emanuel Hill was a full-time employee of Kylee, R. 643 (Trial Tr. at 146) (E. Hill Direct) (Page ID #12091); (3) formal documents falsely stating that Gary Richardson was a full-time employee of JMR Investments, R. 728-3 (Vernon Richardson Dep. Tr. at 11) (Page ID #14508); (4) falsified references and statements about previous construction jobs, R. 647 (Trial Tr. at 49–51) (Speight Direct) (Page ID #12364–66); and (5) manipulated payrolls with fabricated information, R. 649 (Trial Tr. at 57–58) (Woods Direct) (Page ID #12693–94).

> The investigations also brought several circular financial transactions to light, *see, e.g.*, R. 657 (Trial Tr. at 182–84) (Stevens Direct) (Page ID #13104–06), and indicated that Mr. Lanier regularly signed Emanuel Hill's and Gary Richardson's names on formal documents, *see, e.g.*, R. 647 (Trial Tr. at 22–23, 59) (Speight Direct) (Page ID #12337–38, 12374). Mrs. Lanier regularly notarized documents with these fraudulent signatures. *See, e.g., id.* at 32–33 (Speight Direct) (Page ID #12347–48).

*United States v. Lanier*, No. 23-5217, 2024 WL 915158, at *1–2 (6th Cir. Mar. 4, 2024).

On May 28, 2024, and June 5, 2024, Ricky and Katrina Lanier filed their § 2255 motions. (Doc. 1 in Case No. 2:24-cv-91; Doc. 1 in Case No. 2:24-cv-99.) Their § 2255 motions are almost identical and raise the same arguments. (*Compare* Doc. 1 in Case No. 2:24-cv-91 *with* Doc. 1 in Case No. 2:24-cv-99.) In their motions, Ricky and Katrina Lanier assert that the Court should vacate their convictions and sentences because: (1) the Court's jury instructions and verdict form impaired the jury's ability to deliver an impartial verdict; (2) they received ineffective assistance of counsel based on their attorneys' failure to raise issues related to the Court's jury instructions and verdict form; (3) the Court erred in allowing "video testimony from the prior trial"; (4) the Government engaged in race-based forum shopping in procuring its indictment against them; (5) they received ineffective assistance of counsel based on their attorneys' failure to raise a "conflict of interest" issue; (6) they received ineffective assistance of counsel "in arguing the calculation of Fair Market Value"; (7) the Government withheld information regarding the Independent Government Estimate for the Tremont Wastewater contract; (8) Ricky Lanier was permitted to sign documents on Emanual Hill's behalf under North Carolina notary laws; (9) they were denied due process protections afforded by SBA regulations; and (10) Latoya Speight, a witness called by the Government, referenced prior testimony from their first trial. (*See generally id.*) Ricky and Katrina Lanier's § 2255 motions are now ripe for the Court's review.

## II. STANDARD OF LAW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."[1] *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citations and quotations omitted).

## III. ANALYSIS

### A. Arguments Addressed on Direct Appeal

In their motions, Ricky and Katrina Lanier argue that the Court should vacate their convictions and sentences based on arguments they raised on direct appeal and that the Sixth Circuit rejected. Specifically, the Laniers argue that: (1) the Court incorrectly calculated the loss amount used to determine their guidelines calculation at sentencing; (2) Ricky Lanier was authorized to sign documents on Emanual Hill's behalf; and (3) they were denied due process rights afforded to them under Small Business Administration regulations. (Doc. 1, at 13, 15–16 in Case No. 2:24-cv-91; Doc. 1, at 13, 15–16 in Case No. 2:24-cv-99.) The Sixth Circuit, however, expressly rejected these arguments in affirming the Laniers' convictions and sentences

---

[1] In ruling on a § 2255 petition, the Court must also determine whether an evidentiary hearing is necessary. "An evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quoting *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). In this case, an evidentiary hearing is not needed because the record conclusively shows that the Laniers are not entitled to relief.

on direct appeal. *Lanier*, 2024 WL 915158, at *3, 5–7. As a result, these arguments fail to demonstrate a fundamental defect in the underlying proceedings meriting relief under § 2255.

### B. Ineffective Assistance of Counsel

Ricky and Katrina Lanier also argue that the Court should vacate their convictions and sentences because they received ineffective assistance of counsel. Specifically, they argue that their counsel rendered constitutionally deficient performance because counsel: (1) did not object to the jury instructions and verdict form which included "gaps in count numbers" and references to the second superseding indictment, thereby allowing the jury to conclude that there were prior indictments and a prior trial; (2) failed to object to "video testimony from [their] prior trial"; and (3) failed to challenge the Court's loss calculation at sentencing based on "Fair Market Value" and "Independent Government Estimate." (Doc. 1, at 4–8, 12 in Case No. 2:24-cv-91; Doc. 1, at 4–8, 12 in Case No. 2:24-cv-99.)

To collaterally attack a conviction based on ineffective assistance of counsel, a petitioner must establish "that her lawyers performed well below the norm of competence in the profession and that this failing prejudiced her case." *Caudill v. Conover*, 881 F.3d 454, 460 (6th Cir. 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Therefore, the Court should resist "the temptation to rely on hindsight . . . in the context of ineffective assistance claims." *Carson v. United States*, 3 F. App'x 321, 324 (6th Cir. 2001); *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

7

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Additionally, the prejudice inquiry requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In this case, Ricky and Katrina Lanier have failed to demonstrate that their counsel's performance fell below an objective standard of reasonableness or that counsel's performance prejudiced their cases. First, the alleged failure to object to the jury instructions and verdict form based on "gaps in the count numbers" and references to the "Second Superseding Indictment" did not fall below an objective standard of reasonableness or permit the jury to conclude the existence of prior indictments or a prior trial. Indeed, the Court's jury instructions expressly directed the jury that: (1) the Laniers were "only on trial for the particular crimes charged in the indictment"; (2) the indictment was "not any evidence of guilt"; (3) the Laniers were presumed innocent and it was the Government's burden to prove guilt beyond a reasonable doubt"; and (4) the jury was required to make its decision based on the evidence it heard in court. (Doc. 723, at 7–8, 20.) Based on these instructions, which the jury is presumed to have followed, counsel's performance did not fall below an objective standard of reasonableness based on an alleged failure to object to the jury instructions and verdict form. *See United States v. Olano*, 507 U.S. 725, 740 (2003) ("We presume that jurors in a criminal case, conscious of the gravity of their task, attend closely to the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.") (cleaned up; citations omitted)).

Additionally, the Laniers did not receive ineffective assistance of counsel based on counsels' failure to object to introduction of video testimony at trial. At trial, the Government

introduced video testimony from depositions conducted for unavailable witnesses. (*See* Doc. 595 (Order granting motions to take depositions); Doc. 649, at 5 (testimony of Vernon Richardson; Doc. 650 (testimony of Sandra Fisher); Doc. 657 (testimony of Joe Hill).) The Laniers do not argue that these witnesses were not unavailable, and the Court's admission of such testimony does not violate the Confrontation Clause because their attorneys had an opportunity to cross-examine these witnesses during their depositions. *United States v. Porter*, 886 F.3d 562, 568 (6th Cir. 2018). As a result, the alleged failure to object to the introduction of video testimony under these circumstances did not fall below an objective standard of reasonableness.

Finally, to the extent they argue that they received ineffective assistance of counsel based on the alleged failure to object to the Court's loss calculation at sentencing, the Laniers ignore that their attorneys made these exact objections at sentencing. Indeed, Ricky Lanier's attorney argued that there should not be any loss because "loss should be reduced by the fair market value of the services rendered." (Doc. 716, at 7–8 in Case No. 2:14-cr-83). Similarly, Katrina Lanier's attorney argued that loss should be calculated based on the "independent government estimate" of the value of the contracts. (*Id*. at 38). Moreover, as explained above, the Sixth Circuit affirmed the Court's loss calculation. *Lanier*, 2024 WL 915158, at *3, 5–7. As a result, the Laniers have failed to demonstrate that they received ineffective assistance of counsel in connection with the Court's loss calculation at sentencing.

### C. Procedural Default

In addition to the foregoing, several of the Laniers' arguments fail because their claims have been procedurally defaulted. The "Procedural-Default Rule" provides that "claims not raised on direct appeal may not be raised on collateral review." *Massaro v. United States*, 538

U.S. 500, 504 (2003). Failure to raise these claims on direct review therefore generally precludes a petitioner from raising them in a § 2255 motion. *Id*. The Procedural-Default Rule, however, does not apply to ineffective-assistance-of-counsel claims, which may be first raised in a § 2255 motion. *See Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) ("Claims of ineffective assistance of counsel are properly raised in a section 2255 motion."). Nonetheless, a petitioner may raise procedurally defaulted claims if he "can first demonstrate [ ] cause and actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations and quotations omitted). A petitioner shows "cause" by "offering a sufficient excuse for their failure to timely raise a claim."[2] *Wallace v. United States*, 43 F.4th 595, 602 (6th Cir. 2022) (citation omitted). When a petitioner alleges that ineffective assistance of appellate counsel was the "cause" of the procedural default, he must "show both that an attorney performed incompetently, and that this legal malpractice prejudiced [him]." *Id*. By making this showing, a petitioner "generally satisfies the logically distinct 'prejudice'" element to avoid the procedural default. *Id.* (citing *Hall v. Vasbinder*, 563 F.3d 222, 237 (6th Cir. 2009)). To prove prejudice from an appellate attorney's error, a petitioner must show that there is a "reasonable probability that they would have won on the issue that the attorney failed to raise." *Id.* at 603 (citations and quotation omitted).

Even assuming appellate counsel refused to raise certain arguments on direct appeal, the Laniers have not demonstrated that the failure to raise those issues constituted deficient performance or a reasonable probability that they would have won on appeal on the issues their attorneys refused to raise. Indeed, appellate counsel is not obligated "to raise every possible

---

[2] Procedural default can also be excused when a petitioner can demonstrate "actual innocence." *Bousley*, 523 U.S. at 623. The Laniers have not, however, alleged actual innocence, and, as a result, it is not a basis to excuse to overcome their procedurally defaulted claims.

claim and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (internal citations omitted). Moreover, the Laniers cannot overcome their procedural default because their procedurally defaulted arguments are meritless. As discussed above, the Court's references to the second superseding indictment and the gaps in the count numbers were not prejudicial to the Laniers, because the Court instructed the jury that the indictment was not evidence, the Laniers were only on trial for the crimes charged, and the jury must make its decision based on the evidence presented. (*See infra* § III.B.) Further, and contrary to the Laniers' arguments otherwise, the Court was not required to include "hung jury" as an option on the verdict form. The Court expressly instructed the jury that its decision, guilty or not guilty, had to be unanimous, and the Laniers have not provided any evidence to suggest that the jury failed to follow its instructions. (Doc. 723, at 37 in Case No. 2:14-cr-83.) Similarly, as discussed above, the video testimony presented at trial did not violate the Laniers' confrontation clause rights because it was video testimony from unavailable witnesses that the Laniers' attorneys had an opportunity to cross-examine during depositions. (*See infra* § III.B.) Next, the Laniers' claim that the prosecution engaged in race-based forum selection in procuring their indictment fails because it is pure speculation.[3] *See Watkins v. United States*, No. 22-4000, 2023 WL 9054600, at *2 (6th Cir. June 21, 2023) (denying certificate of appealability in connection with § 2255 motion based on argument that was "pure speculation"). Finally, a witness's trial testimony that passingly referred to the "last time [she] testified" is insufficient to demonstrate that the jury disregarded the Court's instructions and somehow relied on the witness's testimony

---

[3] The Court also notes that the Laniers have not provided any reason as to why they failed to raise their race-based forum-shopping argument on direct appeal. This failure alone is sufficient to conclude that this argument has been procedurally defaulted.

from the Laniers' first trial in finding them guilty of the crime charged. Again, the Court instructed the jury to make its decision based on the evidence it saw and heard in Court, and the Laniers have not provided any evidence suggesting that the jury failed to follow that instruction. (*See* Doc. 723, at 8 in Case No. 2:14-cr-83.) As a result, the Laniers have not demonstrated that appellate counsel was deficient or that they would have won on appeal had their appellate counsel raised any of the forgoing issues. Accordingly, the Laniers have failed to demonstrate cause necessary to overcome their procedural default and have also failed to demonstrate that there was an error of law so fundamental as to render the entire proceedings invalid. The Court will therefore **DENY** their § 2255 motions.

IV. **CONCLUSION**

For the reasons stated herein, Ricky and Katrina Lanier's motions to set aside, vacate, or correct their convictions and sentences filed pursuant to 28 U.S.C. § 2255 (Doc. 1 in Case No. 2:24-cv-91; Doc. 1 in Case No. 2:24-cv-99; Docs. 733, 734 in Case No. 2:14-cr-83) are **DENIED**. Should Petitioners give timely notice of an appeal from this order, such notice will be treated as an application for a certificate of appealability, which is hereby **DENIED** since they have failed to make a substantial showing of the denial of a constitutional right or "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court [is] correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**